# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Matthew Funk, ) | |
|     Petitioner, ) | CV-06-0273-PHX-NVW (JCG) |
| ) | **REPORT & RECOMMENDATION** |
| vs. ) | |
| ) | |
| Dora Schriro, et al., ) | |
|     Respondents. ) | |

Petitioner, Bryan Matthew Funk, who is presently confined in the Barchey Unit of the Arizona State Prison Complex in Buckeye, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Guerin for Report and Recommendation. Before the Court are the Petition for Writ of Habeas Corpus ("Petition") (Doc. No. 1), a supplement to the Petition (Doc. No. 12), Respondents' Response to Petition for Writ of Habeas Corpus ("Answer") (Doc. No. 20), and Petitioner's Reply (Doc. No. 21). The Magistrate Judge recommends that the District Court deny the Petition.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On October 20, 2001, Petitioner attended a party with co-defendants Jacob Greenrock, Chance Hart and Brad Hart. (Answer, Ex. A, pg. 3.)[1]  Jacob was 19 years old at the time;

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." The facts stated herein are taken from the Arizona Court of Appeals Memorandum Decision dated December 16, 2003, unless otherwise stated.

Brad was 17 and Chance was 16.[2]  (Answer, Ex. B, pgs. 4-5.)  During the party, the co-defendants consumed beer, marijuana, opium and nitrous oxide.  In addition, Jacob and Brad consumed ecstasy, and Jacob took one or two Xanax pills.  According to Petitioner, he consumed only beer and marijuana.

Police broke up the party one or two hours after Petitioner and the co-defendants had arrived.  Petitioner and the co-defendants fled from the police in Petitioner's vehicle; another party-goer, the victim, joined them.  Although Petitioner did not know the victim, he agreed to give him a ride so that the victim would not get in trouble with the police.  Jacob rode in the front seat with Petitioner while the victim sat in the back between Chance and Brad.  According to Petitioner, he slammed on the brakes to "mess around," causing the victim to jerk forward and then head-butt Chance.  This angered Chance, who asked Petitioner to pull the car over.  Once the car was stopped, the victim was pulled from the car and beaten by the co-defendants and Petitioner.

The victim was discovered the next morning, still alive but unidentifiable because Jacob had taken his wallet.  The victim was taken to the hospital and died from his injuries two days later.  His body was eventually identified based on his tattoos, which were displayed on local television news.  After a four-month investigation, police arrested Petitioner, who cooperated and led police to the other three co-defendants.  All four defendants initially lied about their involvement, and all four were subsequently charged with second-degree murder, a class one felony.  Each of the defendants was offered the opportunity to plead guilty to manslaughter, a class two, dangerous felony.  Petitioner declined, but the three co-defendants took the offer.  As part of their plea agreements, each co-defendant testified at Petitioner's trial while awaiting sentencing.

At trial, the three co-defendants testified that Petitioner was the one to pull the victim from the car.  All four defendants agree that once the victim was out of the car, Jacob was the first to hit him.  After Jacob struck the victim, Chance and Brad began to hit him.  Brad was holding a screwdriver in his hand while he hit the victim in the face.  Each of the co-

---

[2] Petitioner's age at the time of the crime is not alleged.

2

defendants testified that Petitioner straddled the victim while he was on the ground and repeatedly pummeled him, delivering in excess of ten blows.  Jacob testified that all of the defendants, including Petitioner, kicked the victim while he was on the ground.

Petitioner's testimony differed significantly from that of the other defendants. Petitioner maintained that Jacobs, not Petitioner, pulled the victim from the car.  Petitioner also testified that he hit the victim only twice, in self-defense.  According to Petitioner, when the others began to beat the victim, he got in the car and encouraged the others to leave, even starting the car and pulling away slowly until the others joined him.  Petitioner denied straddling and punching the victim.

Petitioner was convicted of second degree murder, a class 1 felony. He was sentenced to twenty-one years and received 436 days of presentence incarceration credit.  In addition, Petitioner was ordered to pay restitution jointly and severally with the co-defendants.  On October 16, 2003, appellate counsel for Petitioner filed an *Anders* brief stating that she had found no arguable question of law that was not frivolous.  (Answer, Ex. B.)  The Court of Appeals granted Petitioner an opportunity to file a supplemental brief; Petitioner did so, raising seven issues:

(1)     The co-defendants who testified lied about Petitioner's actions;

(2)     The co-defendants felt that they had to implicate Petitioner in order to keep their plea bargains intact;

(3)     The verdict was based on insufficient evidence or against the weight of the evidence, given the lack of credibility of the eyewitnesses;

(4)     The charge of second degree murder was inappropriate because Petitioner did not intend to murder the victim;

(5)     When testifying, Petitioner's sister mentioned that Petitioner was presently detained, and this statement should have resulted in a mistrial;

(6)     The prosecution deliberately struck all Hispanic and African-American jurors from the panel; and

(7)     Compared to the other defendants, Petitioner consumed less alcohol and took

fewer drugs, so therefore his testimony should have been given more weight.[3] (Answer, Exs. A, B & C.) On December 16, 2003, the Court of Appeals issued a memorandum decision affirming Petitioner's conviction. (Answer, Ex. C.)

On December 30, 2003, Petitioner filed a petition for review by the Arizona Supreme Court, raising three issues:

(1) Petitioner never intended to murder the victim; the victim's death was an accident "knowing from what was seen";

(2) The Court of Appeals misread the record when it concluded that it could find no evidence that Petitioner's sister testified that Petitioner was in prison; and

(3) There was evidence in the record that Petitioner's hand had a cut on it but his blood was not discovered on the victim, which should have proved that Petitioner did not beat the victim to the degree that his co-defendants testified and that his co-defendants were lying.

(Answer, Ex. D.) On March 31, 2004, the Arizona Supreme Court summarily denied Petitioner's petition for review. (Answer, Ex. E.)

On May 19, 2004, Petitioner filed a notice of post-conviction relief. (Answer, Ex. G.) On October 18, 2004, Petitioner filed a counseled Rule 32 petition for post-conviction relief, raising one issue: the trial court, rather than the jury, found the facts used to aggravate Petitioner's sentence in violation of the Sixth Amendment under Blakely v. Washington, 542 U.S. 296 (2004). (Answer, Ex. H.) On January 6, 2005, the trial court summarily dismissed Petitioner's petition for post-conviction relief, finding that Blakely did not apply retroactively. (Answer, Ex. I.)

On May 31, 2005, Petitioner filed a counseled petition for review by the Arizona Court of Appeals, raising the same issue. (Answer, Ex. J.) On March 3, 2006, the Arizona

---

[3] Although the Court of Appeals identified issues (6) and (7) as issues presented in Petitioner's supplemental brief (Answer, Ex. A), Petitioner's supplemental brief, provided by Respondents as Exhibit C to the Answer, does not appear to raise those issues. Those issues appear to be raised in a document dated November 11, 2003 which was included in Petitioner's Supplement to his Petition and which was presumably presented to the Court of Appeals. (Petitioner's Supplement, Exh. 1, pg. 4.)

Court of Appeals summarily denied Petitioner's petition. (Answer, Ex. K.)

On January 23, 2006, Petitioner filed his Petition for Writ of Habeas Corpus in federal court. In his Petition and Supplement, Petitioner presents nine claims for relief:[4]

1. **Ground 1:** Petitioner was denied his 14th Amendment right to due process when his appellate counsel failed to file a motion for reconsideration of Petitioner's direct appeal;

2. **Ground 2:** Petitioner's trial was unfair because the witnesses offered conflicting testimony and co-defendants were motivated to testify in order to keep their plea agreements intact;

3. **Ground 3:** Petitioner's conviction was based on insufficient evidence because it relied solely on the inconsistent testimony of the co-defendants, not on scientific or physical evidence;

4. **Ground 4:** Petitioner has discovered new evidence that the victim put his head through a wall at the party, prior to the alleged crime; this evidence along with evidence that the victim was mentally unstable should have been presented at Petitioner's trial and Petitioner's trial counsel was ineffective for failing to present such evidence;

5. **Ground 5:** The trial court judge inaccurately instructed the jury on the charge of murder in the second degree when the charge should have been manslaughter;

6. **Ground 6:** Petitioner received ineffective assistance of counsel because his appellate counsel failed to file a motion for reconsideration;

7. **Ground 7:** Petitioner was sentenced in violation of Blakely v. Washington;

8. **Ground 8:** The sentencing judge found that Petitioner had caused the victim's family severe emotional distress without considering expert testimony from a

---

[4] Petitioner's Petition is somewhat hard to follow because Petitioner identifies a specific "Ground" by heading but then raises several different issues within that Ground. The Court has construed each issue identified by Petitioner as a separate Ground, despite the captioning of the Petition.

|   |   |   |
|---|---|---|
| 1 |   | licensed psychiatrist on that issue; |
| 2 | 9. | **Ground 9:** Petitioner's sentence is two years beyond the maximum because the sentencing judge added 3 years of supervised release to Petitioner's 21-year sentence. |

(Petition, pgs. 5-7.)

Respondents contend that the Petition should be denied because (1) some of the grounds for relief allege only state law questions that are not cognizable on federal habeas review, (2) Petitioner has failed to exhaust his state court remedies because he did not present any of his claims to the Arizona Supreme Court, (3) Petitioner has failed to exhaust his state court remedies because Petitioner failed to present his claims to any state court, or did not present them as federal issues, and (4) Petitioner's claim that his sentence violated Blakely v. Washington is without merit.

In his Reply, Petitioner denies Respondents' claim that Petitioner failed to properly exhaust his state court remedies prior to filing his federal Petition.

## DISCUSSION

The Magistrate Judge recommends that the Petition be denied because Petitioner has failed to exhaust his state court remedies with respect to Grounds 1, 2, 3, 4, 5, 6, 8 and 9 and because Ground 7 is without merit.

**A.   Exhaustion**

Ordinarily, before a federal court will consider the merits of a habeas petition, the petitioner must exhaust the remedies available to him in state court. 28 U.S.C. §2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275 (1971). First enunciated in Ex parte Royall, 117 U.S. 241 (1886), the exhaustion requirement is designed "not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." Keeney v. Tamayo-Reyes, 504 U.S. 1, 10 (1992). The requirement is grounded in principles of comity, and reflects a desire to protect state courts' role in the enforcement of federal law. Castille v. Peoples, 489 U.S. 346, 349 (1989)

1  (citation omitted).  The requirement is also based on a pragmatic consideration that fully
2  exhausted claims will usually be accompanied by a complete factual record once they reach
3  federal court.  Rose v. Lundy, 455 U.S. 509, 519 (1982).

4  A petitioner must exhaust his claims by fairly presenting them in state court, either
5  through a direct appeal or collateral proceedings, before a federal court will consider the
6  merits of habeas corpus claims pursuant to 28 U.S.C. § 2254.  See Rose, 455 U.S. at 519.
7  A petitioner must have also presented his claim in a procedural context in which its merits
8  will be considered.  See Castille, 489 U.S. at 351.  A habeas petitioner's claims may be
9  precluded from federal review on exhaustion grounds in either of two ways.  First, a claim
10 may be procedurally defaulted in federal court if it was actually raised in state court but
11 found by that court to be defaulted on state procedural grounds.  See Coleman v. Thompson,
12 501 U.S. 722, 729-30 (1991).  Second, the claim may be procedurally defaulted in federal
13 court if the petitioner failed to present the claim in a necessary state court and "the court to
14 which the petitioner would be required to present his claims in order to meet the exhaustion
15 requirement would now find the claims procedurally barred."  Id. at 735 n.1.  If a petitioner
16 has procedurally defaulted a claim in state court, a federal court will not review the claim
17 unless the petitioner shows "cause and prejudice" for the failure to present the constitutional
18 issue to the state court, or makes a colorable showing of actual innocence.  See Gray v.
19 Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray
20 v. Carrier, 477 U.S. 478, 485 (1986).

21     **1.     Non-cognizable Claims**

22  Petitioner has failed to exhaust grounds 1, 2, 3, 4, 5, 8 and 9 of his Petition.  Petitioner
23 failed to present Grounds 1, 4, 6, 8 and 9 to the state courts prior to filing his federal Petition.
24 Grounds 2, 3 and 5 of the Petition were not properly raised in state court.

25     **a.     Grounds 1, 4, 6, 8 and 9**

26  To properly exhaust state remedies, the petitioner must "fairly present" his claims in
27 state court in a procedurally appropriate manner.  O'Sullivan v. Boerckel, 526 U.S. 838, 848
28 (1999).  A claim is "fairly presented" if the petitioner has described the operative facts and

7

the federal legal theory on which his claim is based so that the state courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim. Anderson v. Harless, 459 U.S. 4, 6 (1982); Picard, 404 U.S. at 277-78. Petitioner did not present Grounds 1, 4, 6, 8 or 9 in either his direct appeal or his Rule 32 petition and cannot raise those claims for the first time in federal court. Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Grounds 1, 4, 6, 8 or 9 in state court absent an applicable exception. See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).

Of the exceptions recognized by Rule 32.1, Ariz. R. Crim. P, the only exception which arguably applies to Grounds 1, 4, 6, 8, or 9 is Rule 32.1(e), which recognizes newly discovered evidence as grounds for relief in a Rule 32 petition. In Ground 4 of his federal Petition, Petitioner claims that he has discovered new evidence that the victim put his head through a wall at the party, and therefore his death may have been the result of self-induced injury rather than the beating that he suffered at the hands of Petitioner and his co-defendants.[5] However, Rule 32.1(e) only recognizes an exception for newly discovered evidence that "probably would have changed the verdict or sentence." In the present case, Petitioner was convicted based on the testimony of three co-defendants who claimed that Petitioner straddled the victim while he was on the ground and repeatedly pummeled him, delivering in excess of ten blows. Jacob testified that all of the defendants, including Petitioner, kicked the victim while he was on the ground. Petitioner himself testified that he hit the victim twice and that the other co-defendants beat the victim. A coroner testified that the damage to the victim's skull resulted from either numerous blows or one blow with "a heck of a lot of force ... to do that much damage." (Reply, Ex. C, pg. 1.) The coroner also testified that some of the victim's injuries appear to have been caused by a blow from a screwdriver. (Id., pg. 2.) Neither Petitioner nor his co-defendants testified that the victim appeared to have suffered a head injury prior to getting into Petitioner's car. Given this

---

[5] Petitioner does not allege that he exercised due diligence in obtaining this evidence, or that the evidence could not have been discovered earlier, and thus the claim likely also fails under Rule 32.1(e)(1) & (2).

8

evidence, the Court finds that, even if Petitioner's counsel had presented evidence that the victim had put his head through a wall during the party, it is not probable that such testimony would have changed the verdict. See Ortiz v. Stewart, 149 F.3d at 923, 931 (1998) (stating that it is the role of the district court to determine if a petitioner presently has a remedy available in state court).

Thus, Grounds 1, 4, 6, 8 and 9 are technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 749-50 (citations omitted; internal quotation marks omitted); Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992). Petitioner has not presented any arguments in his Petition or Supplement which constitute a showing of cause and prejudice or a fundamental miscarriage of justice, and therefore Petitioner is not entitled to relief on Grounds 1, 4, 6, 8 or 9.

### b.     Grounds 2, 3 and 5

Petitioner presented Grounds 2, 3 and 5 in his direct appeal of his conviction. However, Grounds 2, 3 and 5 were not presented to the state court as federal claims, and they are not presented in the Petition as federal claims. Accordingly, Grounds 2, 3 and 5 are not cognizable on federal habeas review. See Picard, 404 U.S. at 277 (holding that it is not sufficient to raise only the facts supporting the claim; rather, "the constitutional claim ... inherent in those facts" must be brought to the attention of the state court); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (holding that a state prisoner must claim that he is in custody in violation of a federal constitutional or statutory right before he may receive relief through a writ of habeas corpus).

Petitioner is now precluded by Arizona Rules of Criminal Procedure 32.2(a)(3) and 32.4 from obtaining relief on Grounds 2, 3 or 5 in state court absent an applicable exception, which he does not assert. See Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h); Beaty v. Stewart, 303 F.3d at 997, 987 & n.5 (2002) (finding no state court remedies and noting that petitioner did not raise any exceptions to Rule 32.2(a)). Thus, Grounds 2, 3 and 5 are technically exhausted but procedurally defaulted, absent a showing of cause and prejudice or a fundamental

1  miscarriage of justice. See Coleman, 501 U.S. at 749-50 (citations omitted; internal quotation marks omitted); Thomas, 979 F.2d at 749. Petitioner has not presented any arguments in his Petition or Supplement which constitute a showing of cause and prejudice or a fundamental miscarriage of justice, and therefore Petitioner is not entitled to relief on Grounds 2, 3 or 5.

### 2. Cognizable Claim

Respondents contend that Petitioner has failed to exhaust his state court remedies with respect to each of his claims, including Ground 7, because he did not raise any of his claims to the Arizona Supreme Court through the available option of a petition for review of the Court of Appeals' denial of his petition for review of trial court's denial of his Rule 32 petition. In Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999), the Ninth Circuit held that, in cases not carrying a life sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." There is no dispute that Petitioner met the exhaustion requirements described in Swoopes by appealing the trial court's adverse ruling on Ground 7 to the Arizona Court of Appeals. Respondents, however, submit that Swoopes was incorrectly decided and has been implicitly overruled by more recent case law, and contend that Petitioner has therefore failed to exhaust his state remedies by failing to seek review by the Arizona Supreme Court. In support of their argument, Respondents cite Baldwin v. Reese, 541 U.S. 27 (2004).

In Baldwin, which was a case appealed from the Ninth Circuit, the Supreme Court addressed the question of what constitutes notice of the federal nature of a claim sufficient to satisfy the fair presentment requirement found in 28 U.S.C. § 2254(b)(1). In laying the groundwork for its decision, the Supreme Court stated that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." 541 U.S. at 29 (citations omitted). Respondents assert that this statement supports a finding that Swoopes, at least insofar as it addresses the

need for habeas petitioners to seek review in a the highest state court, is no longer valid.

The rationale employed in the Swoopes decision is distinguishable from the general statements of law cited by the Respondents. Swoopes was decided on remand to the Ninth Circuit for reconsideration in light of the Supreme Court's decision in O'Sullivan v. Boerckel, 526 U.S. 838 (1999). In Swoopes, the Ninth Circuit, just like the Baldwin court, began by reiterating the general rule stated in O'Sullivan that, "in order to satisfy the exhaustion requirement for federal habeas relief, state prisoners must file for discretionary review in a state supreme court when that review is part of ordinary appellate review." Swoopes, 196 F.3d at 1009. The court recognized, however, that the Supreme Court in O'Sullivan had "acknowledged an exception to the exhaustion requirement," by making it clear the "'the creation of a discretionary review system does not, *without more*, make review' in a state supreme court 'unavailable.'" Swoopes, 196 F.3d at 1009 (quoting O'Sullivan, 526 U.S. at 839) (emphasis added in Swoopes). The Ninth Circuit proceeded to review Arizona's discretionary review system and found considerations that compelled a finding that, in other than capital cases, appeal to the Arizona Supreme Court was unnecessary. Specifically, the court concluded that two Arizona cases, State v. Shattuck, 140 Ariz. 582, 684 P.2d 154 (1984), and State v. Sandon, 161 Ariz. 157, 777 P.2d 220 (1989), made it clear that, "in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." Swoopes, 196 Ariz. at 1010. Thus, the court concluded, "post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of O'Sullivan." Baldwin does not clearly conclude that this analysis is flawed.

Also strongly suggestive of the continued vitality of Swoopes is that the Ninth Circuit continues to cite the case for the proposition Respondents suggest was overruled. In Castillo v. McFadden, 399 F.3d 993 (9th Cir. 2005), the court repeated the principle that "[i]n cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" Id. at 998 n. 3, quoting Swoopes, 196 Ariz. at 1010. At least one other circuit has

11

1 also cited <u>Swoopes</u> for this proposition without questioning its continuing validity. See
2 <u>Lambert v. Blackwell</u>, 387 F.3d 210 (3rd Cir. 2004).

3 Consequently, the Magistrate Judge concludes that Petitioner properly presented Ground 7 in his Rule 32 petition and his Court of Appeals petition for review of the trial court's denial of his Rule 32 petition. Accordingly, Petitioner has fairly exhausted Ground 7 and the merits of Ground 7 will be addressed below.

**B.  Merits**

**1.     Standard of Review**

On habeas review, a state court's findings of fact are entitled to a presumption of correctness when fairly supported by the record. <u>Wainwright v. Witt</u>, 469 U.S. 412, 426 (1985). The presumption of correctness also applies to a state appellate court's findings of fact. <u>Sumner v. Mata</u>, 449 U.S. 539, 546 (1981). The question presented in a state prisoner's petition for a writ of habeas corpus is "whether the state proceedings satisfied due process." <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919-20 (9th Cir. 1991).

Federal courts may entertain a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. <u>Reed v. Farley</u>, 512 U.S. 339 (1994). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated the petitioner's Fourteenth Amendment right to due process. <u>Estelle</u>, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."); <u>Bonin</u>, 77 F.3d 1155, 1158 (9th Cir. 1996). The Supreme Court has held in the habeas context that "this Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman</u>, 501 U.S. at 729. The provisions of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) govern this case and pose special burdens. <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir.2004) (en banc). Under AEDPA, when reviewing a state criminal conviction, a federal court may grant a writ of habeas corpus only if a state court proceeding "(1) resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or "if the state court confronts a set of facts that are materially indistinguishable from" a Supreme Court decision but "nevertheless arrives at a result different from" that precedent. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle" from a Supreme Court decision "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. In considering whether a state court has unreasonably applied Supreme Court precedent, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; Bell v. Cone, 535 U.S. 685, 694 (2002). In conducting habeas review, we "presum[e] that state courts know and follow the law." Woodford v. Visciotti, 537 U.S. 19, 24 (2002).

**2.     Ground 7**

Petitioner claims in Ground 7 that he was sentenced in violation of Blakely v. Washington, 542 U.S. 296 (2005), because a judge, not a jury, engaged in fact-finding regarding the aggravating and mitigating factors relevant to Petitioner's sentence. In considering Petitioner's Rule 32 petition, the trial court concluded that Petitioner's conviction became final on April 29, 2004, when the Court of Appeals issued its mandate. (Answer, Ex. I.) The trial court noted that Petitioner's conviction was therefore final several months before Blakely was decided. The trial court, relying on Schriro v. Summerlin, 542 U.S. 348 (2004), found that Blakely does not apply retroactively and that therefore it did not apply to

1  Petitioner's conviction and sentence.

2      The trial court's decision was neither contrary to nor an unreasonable application of
3  federal law.  Blakely does not apply retroactively.  See generally Teague v. Lane, 489 U.S.
4  288 (1989); Summerlin, 542 U.S. 348; Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005).
5  The trial court correctly concluded that Petitioner's conviction became final on the day the
6  Court of Appeals issued its mandate and that Blakely was decided several months after that
7  date.  Accordingly, the Magistrate Judge recommends denying the petition with respect to
8  Ground 7.

10  **RECOMMENDATION**

11      Based on the foregoing, the Magistrate Judge recommends that the District Court,
12  after its independent review, enter an order DENYING the Petition for Writ of Habeas
13  Corpus.

14      Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within
15  ten days of being served with a copy of the Report and Recommendation.  If objections are
16  not timely filed, they may be deemed waived. If objections are filed, the parties should use
17  the following case number: **CV-06-0273-PHX-NVW**.

18      The Clerk is directed to mail a copy of the Report and Recommendation to Petitioner
19  and counsel for Respondents.

20      DATED this 29th day of March, 2007.

_____
Jennifer C. Guerin
United States Magistrate Judge